UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY LIGGETT,

    Plaintiff,

v.

PRINCIPAL FINANCIAL GROUP,

    Defendant.
_____/

Case No. 22-cv-11183

Hon. Sean F. Cox
United States District Court Judge

**OPINION & ORDER**
**GRANTING IN PART AND DENYING IN PART DFENDANT'S (ECF No. 31) AND**
**PLAINTIFF'S (ECF No. 33) MOTIONS FOR SUMMARY JUDGMENT**

In this ERISA case, Plaintiff Anthony Liggett seeks to recover short-term disability ("STD") and long-term disability ("LTD") benefits from Defendant Principal Life Insurance Company ("Principal Life"). Principal Life now moves for summary judgment on both Liggett's claims and Liggett moves for summary judgment on his STD claim. Liggett effectively abandons his LTD claim, so Principal Life is entitled to summary judgment on that claim. But Principal Life denied Liggett's STD claim on the advice of a non-treating physician without properly crediting Liggett's treating physician, so the Court shall grant summary judgment for Liggett on that claim and remand the claim to Principal Life.

**PROCEDURAL HISTORY**

Liggett began working for Collins Einhorn Farell P.C. over fifteen years ago, first as a law clerk and then as a paralegal. Liggett was covered by Collins Einhorn's STD and LTD plans, which were administered by Principal Life and governed by ERISA. Liggett stopped working for Collins Einhorn on February 4, 2022, and applied for STD and LTD benefits a few days later. Principal Life later denied Liggett's STD claim for failure to comply with the STD

1

plan's investigation procedure. Although the STD plan permitted Liggett to administratively appeal his STD claim, Liggett filed this action first in May 2022.

Liggett pleads that Principal Life wrongfully denied his STD *and* LTD claims, even though Principal Life had not yet made any decision on his LTD claim when he filed this action. Before the Court took further action on Liggett's complaint, he administratively appealed his STD claim. The Court accordingly stayed this action pending that administrative appeal. Principal Life ultimately denied Liggett's STD appeal as well as his LTD claim in the first instance. Liggett never administratively appealed his LTD claim.

Discovery in this action has closed, and Liggett now moves for summary judgment on his STD claim. For its part, Principal Life seeks summary judgment on both Liggett's claims. The parties' motions have been fully briefed and the Court ordered them submitted without oral argument. *See* E.D. Mich. L.R. 7.1(f)(2). For the following reasons, Principal Life is entitled to summary judgment on Liggett's LTD claim, Liggett is entitled to summary judgment on his STD claim, and the Court shall remand Liggett's STD claim to Principal Life.

## FACTUAL BACKGROUND

Because Liggett effectively abandons his LTD claim, the Court only recounts the undisputed facts material to his STD claim.

### I. The STD Plan

Liggett qualified for benefits under Collins Einhorn's STD plan if two relevant conditions were met. *First*, that Liggett was disabled "solely and directly because of sickness, injury, or pregnancy." (ECF No. 32, PageID.4057). An STD applicant is "Disabled" if he or she "cannot perform the majority of the Substantial and Material Duties of his or her Own Job." (*Id.*). "Substantial and Material Duties" means "[t]he essential tasks generally required by employers from those engaged in a particular job that cannot be modified or omitted." (*Id.*). And "Own

2

Job" means "[t]he job the [beneficiary] is routinely performing when his or her Disability begins." (*Id.*).

*Second*, that Liggett "completed" an "Elimination Period" and "established" a "Benefit Payment Period." (*Id.* at 4058). An "Elimination Period" "start[s] on the date a [beneficiary] becomes Disabled," and is "completed . . . on the . . . 8th day" of disability. (ECF No. 30-2, PageID.3374). And a "Benefit Payment Period" is established on the date that an Elimination Period is completed. Thus, if Liggett was disabled for at least eight consecutive days, then he qualified for STD benefits. The STD plan also authorized physicians hired by Principal Life to examine beneficiaries who apply for STD benefits.

## II.  Liggett's Disability

Liggett gave Principal Life many documents in support of his STD claim, including a statement from his primary treating physician, Dr. Pamela Pirzada.[1] The statement details that Liggett is diagnosed with traumatic brain injury ("TBI") and migraines and is prescribed "zoloft, migraine meds, xanax, and counseling." (ECF No. 24-6, PageID.1784). The statement also records that a "subdural hematoma" was "evacuat[ed]" from Liggett's brain in 1975 in connection with his TBI, and that a 2016 MRI shows "frontoparietal postsurgical changes" and "encephalomalacia" in his brain. (*Id.*). The statement additionally finds that Liggett cannot sit, stand, walk, "[p]ower [g]rasp," reach above shoulder level, "[r]each at waist level/below waist," or "[c]limb/[b]alance." (*Id.* at 1785). And the statement opines that Liggett's "condition is permanent." (*Id.* at 1785).

---

[1] Dr. Pirzada's initial statement is dated February 17, 2022, which was a few days after Liggett applied for STD benefits.

Principal Life drafted a list of clarifying questions for Dr. Pirzada after it received her initial statement, and she answered those questions in a supplemental statement.² The supplemental statement explains that Liggett is diagnosed "with migraines since TBI dx in 1975," and that "the severity of the headaches which caused difficulty at work started around 2/5/2022." (ECF No. 23-4, PageID.1615). The supplemental statement also surmises that "Liggett's headaches may have been exacerbated by a viral covid infection dated 11/2021." (*Id.*).

Dr. Pirzada's supplemental statement also cleared up issues that Principal Life's list of clarifying questions raises regarding the permanence and severity of Liggett's migraines. Specifically, the supplemental statement explains that Liggett's *TBI* was permanent, but that his disabling migraines might not be because "migraine severity can wax and wane from person to person for various reasons." (*Id.*). And the supplemental statement clarifies that although Liggett can walk, sit, or stand *some* of the time, "there was the concern of personal injury for him if he did certain activities *in the midst of severe migraine*." (*Id.* at 1616 (emphasis added)).

Liggett also gave Principal Life medical records from the clinic where Dr. Pirzada worked. Those records show that Liggett complained of migraines and other neurological symptoms during appointments in July and September 2020 and in February, August, and October 2021. The records show that Liggett tested positive for COVID-19 in November 2021 and complained that "his symptoms started getting worse" weeks later in January 2022. (ECF No. 31-1, PageID.3218). The records show that Liggett reported in February 2022 (the month he applied for STD benefits) that "[h]e is unable to think clearly at work" and "has had migraines

---

² Dr. Pirzada's supplemental statement is dated November 17, 2022, which was after Principal Life denied Liggett's STD claim but before it denied his STD appeal.

4

since his TBI." (*Id.* at 3217). And the records reference Liggett's 1975 TBI, brain surgery, and 2016 MRI. (*See id.* at 3217–45, *in passim*).

Liggett gave Principal Life records from other medical practices as well. One such set of records shows that Liggett was treated by a Dr. Belkin on September 12, 2022, over six months after Liggett had first reported that his migraines had become disabling. Liggett told Dr. Belkin that, "[s]ince February," he had been suffering migraines "a few times per week" (ECF No. 24-1, PageID.1685), and that he "reported a worsening of his cognitive issues/migraines since contracting COVID-19" (ECF No. 32, PageID.4073). Another set of records from Liggett's ophthalmologist show that he was being monitored for cataracts.

Liggett also told Principal Life he had returned to full-time work as a paralegal at State Farm on September 6, 2022.

### III. Liggett's STD Claim

Principal Life received Liggett's STD application in February 2022, and Dr. Pirzada's initial statement sometime afterward. Principal Life then drafted its list of clarifying questions for Dr. Pirzada and denied Liggett's STD claim in April 2022. Principal Life's denial letter states, "We didn't get the information we needed to determine your eligibility and/or if you're Disabled and your claim is now declined because we didn't receive Documentation of Loss." (ECF No. 30-1, PageID.3195). Liggett then administratively appealed his STD claim and submitted more evidence, including Dr. Pirzada's supplemental statement.[3]

In a letter dated July 2023, Principal Life rejected Liggett's STD appeal. That letter states that Principal Life was dissatisfied with Dr. Pirzada's assessment of Liggett's disability because "[i]t was unclear what changed in Mr. Liggett's condition and the records did not

---

[3] The parties disagree about whether Principal Life received Dr. Pirzada's supplemental statement before it denied Liggett's STD claim in April 2022.

5

support an increase in migraines at the time he stopped working." (ECF No. 28-9, PageID.3035). The letter also notes that "the records from Dr. Belkin dated September 12, 2022, indicated that Mr. Liggett continued to have migraines three to four times per week, but still returned to work at State Farm." (*Id.*). The letter explains that Principal Life then turned to two non-treating physicians to evaluate Liggett.

Per Principal Life's denial letter, Principal Life first consulted internist Dr. Mark Friedman. The letter does not state whether Dr. Friedman physically examined Liggett or reviewed Dr. Pirzada's supplemental statement, but the report that Dr. Friedman prepared for Principal Life provides no basis for concluding he did.[4] Principal Life's denial letter does, however, recount Dr. Friedman's conclusion that Liggett's physical condition was "normal except for decreased visual acuity related to bilateral cataracts." (ECF No. 28-9, PageID.3035). The letter also adopts Dr. Friedman's finding that Liggett could have worked full-time from February 2, 2022, when he first applied for benefits, through September 5, 2022, when he returned to work for State Farm. The letter says that Principal Life next turned to psychiatrist Dr. Dale Panzer, and that Dr. Panzer concluded Liggett had no disabling mental disorders. The letter ultimately denies Liggett's STD claim because Liggett failed to show that he was disabled from February to September 2022.

## STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists if, taking the evidence in the light most

---

[4] Dr. Friedman's report states that his conclusions are based on "a review of the medical records of Anthony Liggett," and does not discuss Dr. Pirzada's supplemental statement. (ECF No. 20, PageID.517).

favorable to the non-moving party and drawing all reasonable inferences in that party's favor, 'a reasonable jury could return a verdict for the nonmoving party.'" *DeVore v. Univ. of Ky. Bd. of Trs.*, 118 F.4th 839, 844 (6th Cir. 2024) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## ANALYSIS

Liggett pled claims for STD *and* LTD benefits, and Principal Life puts Liggett to his proofs on both those claims. But Liggett's response to Principal Life's summary-judgment motion doesn't address his LTD claim, so Principal Life is entitled to summary judgment on that claim. But Liggett's STD claim is a different story because her points to parts of the administrative record that he believes show he's entitled to STD benefits as a matter of law. The administrative record shows that Principal Life arbitrarily and capriciously denied Liggett's STD claim, and Liggett is entitled to judgment as a matter of law on that claim. And the proper remedy is Principal Life's reconsideration of Liggett's STD claim.

**I.     Liggett's STD Claim**

In ERISA cases, "[i]f the plan administrator is vested with discretion to determine eligibility under the plan, [courts] review the plan administrator's denial of benefits under the arbitrary and capricious standard." *Laake v. Benefits Comm., W. & S. Fin. Grp. Co. Flexible Benefits Plan*, 68 F.4th 984, 990 (6th Cir. 2023). Liggett and Principal Life agree that the arbitrary-and-capricious standard of review applies here. On arbitrary-and-capricious review, courts will uphold a plan administrator's decision to deny benefits unless the beneficiary shows the decision was: (1) not "the result of a deliberate, principled reasoning process"; or (2) not "supported by substantial evidence." *Id.* at 991 (quoting *DeLisle v. Sun Life Assurance Co. of Can.*, 558 F.3d 440, 444 (6th Cir. 2009)). Liggett satisfies the first option here.

7

Liggett's last day of work for Collins Einhorn was February 4, 2022. So, if Liggett was disabled for at least eight consecutive days after February 4, then he completed an Elimination Period, established a Benefit Payment Period, and was entitled to some STD benefits. But Principal Life didn't ask this question. Instead, Principal Life concluded Liggett didn't qualify for STD benefits because he wasn't disabled from February 5 through September 5, 2022. The STD plan, however, only required Liggett to show that he couldn't work for eight consecutive days after he stopped working, not eight consecutive months.

Principal Life also rejected Dr. Pirzada's findings without adequate explanation. *See Elliot v. Metro. Life Ins. Co.*, 473 F.3d 613, 620 (6th Cir. 2006) ("Generally speaking, a plan may not reject summarily the opinions of a treating physician, but must instead give reasons for adopting an alternative opinion."). Dr. Pirzada told Principal Life that Liggett had long suffered migraines because of his 1975 TBI for which he had undergone brain surgery, that his TBI and brain surgery had led to complications, and that these objective medical facts were supported by a 2016 MRI. Dr. Pirzada also told Principal Life that Liggett's migraines likely became disabling in February 2022 because of his November 2021 COVID-19 infection. Liggett's medical records corroborated Dr. Pirzada's conclusions: his medical records refer to his TBI, his brain surgery, his 2016 MRI, and his complaints of migraines. Liggett's medical records also show that he tested positive for COVID-19 in November 2021 and complained of worsening migraine symptoms afterward.

Principal Life rejected Dr. Pirzada's opinion based on two facts: (1) that Liggett had complained of frequent migraines to Dr. Belkin in September 2022; and (2) that Liggett had returned to full-time work that same month. Principal Life thus inferred that Liggett was suffering from identical symptoms in September 2022 when he returned to work that he had

alleged were disabling in February 2022 when he applied for STD benefits. Principal Life therefore concluded that it needed a second opinion. But Dr. Pirzada told Principal Life that migraine symptoms can wax and wane over time, and it follows that Liggett's migraines could have improved during the eight months when he wasn't working. Dr. Belkin's records also don't show that Liggett complained of symptoms in September 2022 that were identical to the symptoms he reported in February 2022. And again, all Liggett had to do was show that he was disabled for at least eight consecutive days from February through September 2022.

After rejecting Dr. Pirzada's findings, Principal Life's turned to Dr. Friedland.[5] That decision was problematic for at least five reasons. *First*, Liggett's medical records supported Dr. Pirzada's findings. *Second*, nothing about Dr. Friedland's report suggests he ever physically examined Liggett even though the STD plan authorized him to do so. *See Calvert v. Firestar Fin., Inc.*, 409 F.3d 286, 295 (6th Cir. 2005) ("[T]he failure to conduct a physical examination—especially where the right to do so is specifically reserved in the plan—may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination."). *Third*, Dr. Friedland didn't address Dr. Pirzada's supplemental statement. *Fourth*, Dr. Friedland discounted Liggett's subjective complaints without pointing to any objective indicia of migraines that were absent from Liggett's medical records. *See Shaw v. AT & T Umbrella Benefit Plan No. 1*, 795 F.3d 538, 550 (6th Cir. 2015) ("Because chronic pain is not easily subject to objective verification, the Plan's decision to conduct only a file review supports a finding that the decision-making was arbitrary and capricious."). *Fifth* and last, Principal Life had "an apparent conflict of interest" because it was "authorized both to decide whether [Liggett] [was] eligible for

---

[5] Principal Life also consulted psychiatrist Dr. Panzer, but Dr. Panzer didn't opine on Liggett's migraines.

benefits and to pay those benefits." *Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006). Principal Life's apparent conflict of interest must be given "appropriate consideration." *Id.*

In sum, Principal Life did not properly consider whether Liggett was entitled to STD benefits. Principal Life "refuse[d] to credit [Liggett]'s [apparently] reliable evidence, including the opinion[] of [his] treating physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 823 (2003). Principal Life instead credited the opinion of a non-treating physician who never examined Liggett and did not seriously engage with Liggett's treating physician's contrary conclusions. And Principal Life was apparently conflicted when it did these things. Thus, Principal Life arbitrarily and capriciously denied Liggett's STD claim and Liggett is entitled to judgment as a matter of law on that claim.

## II.  Remedy

Having concluded that Liggett is entitled to summary judgment on his STD claim, the Court must address the proper remedy. "When a benefits plan is found to have acted arbitrarily and capriciously, [courts] have two options: award benefits to the claimant or remand to the plan administrator." *Shaw*, 795 F.3d at 551. Liggett asks the Court to "order that he is entitled unpaid STD benefits." (ECF No. 33, PageID.4103). But a remand to a plan administrator is appropriate "where the problem is with the integrity of the plan's decision-making process, rather than that a claimant was denied benefits to which he was clearly entitled." *Id.* (*Elliot*, 473 F.3d at 622). Principal Life's decision-making process was flawed here, and Liggett neither states the amount of STD benefits he seeks nor provides any basis for calculating that figure. Remand to Principal Life is accordingly the proper remedy for Liggett's STD claim.

## CONCLUSION & ORDER

Principal Life is entitled to summary judgment on Liggett's LTD claim, but Liggett is entitled to summary judgment on his STD claim. And the proper remedy for Liggett's STD

10

claim is a remand to Principal Life.  Accordingly, **IT IS ORDERED** that Principal Life's summary-judgment motion (ECF No. 31) is **GRANTED** to the extent that it seeks judgment for Principal Life on Liggett's LTD claim and is **DENIED** in all other respects.  **IT IS FURTHER ORDERED** that Liggett's summary-judgment motion (ECF No. 33) is **GRANTED** to the extent that it seeks judgment on Liggett's STD claim and is **DENIED** in all other respects.  And Liggett's STD claim is **REMANDED** to Principal Life for full and fair consideration.

    **IT IS SO ORDERED.**

                                                                           s/Sean F. Cox  
                                                                           Sean F. Cox  
                                                                           United States District Judge

Dated:  January 23, 2025